

F I L E D

MAR 1 0 2011

.. RK, U.S. DISTRICT COURT
RICHMOND, VA

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **AARON TOBEY,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| **JANET NAPOLITANO**, in her official | ) |
| capacity as Secretary of Homeland | ) |
| Security, U. S. Department of Homeland | ) |
| Security, Washington, D. C. 20528 | ) |
| | ) |
| and | ) |
| | ) |
| **JOHN S. PISTOLE**, in his official | ) |
| capacity as Administrator, Transportation | ) |
| Security Administration | ) |
| 601 South 12th Street | ) |
| Arlington, Virginia 20598 | ) |
| | ) |
| and | ) |
| | ) |
| **CAPITAL REGION AIRPORT** | ) |
| **COMMISSION** | ) |
| SERVE: Jon E. Mathiasen, President | ) |
| 1 Richard E. Byrd Terminal Drive | ) |
| Richmond International Airport | ) |
| Richmond, Virginia, 23250 | ) |
| | ) |
| and | ) |
| | ) |
| **VICTOR WILLIAMS**, in his | ) |
| official capacity as Director of Public Safety | ) |
| and Operations, Richmond International | ) |
| Airport Police, | ) |
| 1 Richard E. Byrd Terminal Drive | ) |
| Richmond International Airport | ) |
| Richmond, Virginia, 23250 | ) |
| | ) |
| and | ) |
| | ) |
| **JOHN SMITH**, individually and in his | ) |
| official capacity as a Transportation Security | ) |

CIVIL ACTION No.: ᴓ:11CV154

**COMPLAINT FOR
COMPENSATORY DAMAGES,
INJUNCTIVE AND
DECLARATORY RELIEF,
AND DEMAND FOR JURY
TRIAL**

Officer with the Transportation Security )
Administration of the Department of )
Homeland Security )
Address unknown )
                                            )
and )
                                            )
**CALVIN VANN**, individually )
and in his capacity as an officer of the )
Richmond International Airport Police )
6324 Oakland Chase Pl. )
Richmond, VA 23231-5746 )
                                            )
and )
                                            )
**JOHN DOE # 1**, and )
**JOHN DOE #2**, individually and in their )
official capacities as Officers of the )
 Richmond International Airport Police )
1 Richard E. Byrd Terminal Drive )
Richmond International Airport )
Richmond, Virginia, 23250 )
                                            )
                                            )
    _____*Defendants.*_____ )

## COMPLAINT

COMES NOW Plaintiff AARON TOBEY, by counsel, and hereby alleges as follows:

### PRELIMINARY STATEMENT

This action seeks vindication of the First, Fourth and Fourteenth Amendment rights of Plaintiff Aaron Tobey (hereinafter referred to as "Plaintiff"), who, in the exercise of his rights to Free Speech and to Petition the United States government for the redress of grievances, was arrested without probable cause, falsely imprisoned and maliciously prosecuted for the partial removal of his clothing and display of the text of the Fourth Amendment on his chest during enhanced screening procedures on December 30, 2010 at the Richmond International Airport. The fundamental guarantees of the First,

Fourth and Fourteenth Amendments forbid discrimination against the Plaintiff's peaceful expression opposing screening policies that he believes infringe on the constitutional rights of American citizens, as well as the overbearing, heavy-handed and unfounded actions of security personnel taken against Plaintiff as he sought to cooperate peacefully with the enhanced screening procedure in a manner that was wholly within the law. Accordingly, Plaintiff requests that this Court grant the relief requested herein in order to protect and uphold precious constitutional freedoms that citizens should not be forced to sacrifice in the name of misguided, broad and indiscriminate notions of security.

## I. **JURISDICTION**

1.      Jurisdiction in this Court is founded on the existence of a federal question pursuant to 28 U.S.C. § 1331 and the deprivation of civil rights pursuant to 28 U.S.C. § 1343(a)(3), as this is an action for relief under 42 U.S.C. § 1983, 28 U.S.C. § 2201, and pursuant to the decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

2.      Plaintiff also invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367, as to the claims based upon the laws of the Commonwealth of Virginia, as such claims form part of the same case or controversy that is the basis for the claims within this Court's original jurisdiction.

## II. **VENUE**

3.      Venue in the Eastern District of Virginia is proper pursuant to 28 U.S.C. § 1391 because (a) Defendants reside in this judicial district and in the Commonwealth of Virginia, and (b) all or a substantial part of the events or omissions which give rise to the present claims occurred in this judicial district, and more specifically within Henrico County, Virginia.

3

## III. <u>PARTIES</u>

4.      Plaintiff AARON TOBEY is an adult individual who is, and at all relevant times herein was, a citizen of the United States of America and the Commonwealth of Virginia, with his principal place of residence in Charlottesville, Albemarle County, Virginia.

5.      Defendant JANET NAPOLITANO ("NAPOLITANO"), who is sued in her official capacity, is Secretary of the Department of Homeland Security of which the Transportation Safety Administration ("TSA"), is a division and/or sub-department. Defendant NAPOLITANO has authority over TSA's programs, policies, practices, procedures, customs and protocols, and the promulgation thereof, including, without limitation, policies, practices, procedures, customs and protocols of TSA in conducting security screening at airports located in the United States, and is responsible for ensuring compliance by TSA with applicable law.

6.      Defendant JOHN S. PISTOLE ("PISTOLE"), who is sued in his official capacity, is Administrator of the Transportation Security Administration ("TSA"), a division and/or sub-department of the Department of Homeland Security. Defendant PISTOLE reports to Defendant NAPOLITANO and is directly responsible for the administration and management of TSA's programs, policies, practices, procedures, customs and protocols, and the promulgation thereof, including, without limitation, policies, practices, procedures, customs and protocols of TSA in conducting security screening at airports located in the United States, and the supervision of its employees, and is responsible for ensuring compliance by TSA with applicable law.

7.     Defendant CAPITAL REGION AIRPORT COMMISSION (the "COMMISSION") is a governmental authority created in 1975 by an Act of the General Assembly of the Commonwealth of Virginia.  The COMMISSION is granted authority under the laws of the Commonwealth of Virginia to operate, manage and regulate Richmond International Airport, Richmond, Virginia ("RIC").  Pursuant to its grant of authority, the COMMISSION is responsible for promulgating and enforcing rules and regulations governing the activities at RIC.  In this regard, the COMMISSION maintains an airport police force and employs police officers to enforce the general laws and the rules and regulations promulgated by the COMMISSION, and has entered into agreements with the TSA and the Henrico County Division of Police as to jurisdiction, operations, coordination, collaboration and cooperation in joint law enforcement activities at RIC.

8.     Defendant VICTOR WILLIAMS, who is sued in his official capacity, is the Director of Public Safety and Operations of Defendant COMMISSION, and is responsible for the management, direction and supervision of the RIC Police and all police officers in the employ of the COMMISSION, as well as for the development, promulgation, approval and implementation of all programs, policies, practices, procedures, customs and protocols of the RIC Police including, without limitation, the training and supervision of its police officers, and the operations and interactions of the RIC Police with other security personnel and agencies exercising security functions at RIC.

9.     Defendant JOHN SMITH, whose true identity is presently unknown, was at all relevant times herein a Transportation Security Officer employed by and acting

under the authority of TSA, a division and/or sub-department of the United States Department of Homeland Security. Defendant SMITH is sued herein in both his individual and official capacities.

10.    Defendant CALVIN VANN is, and at all relevant times herein was, a law enforcement officer employed by and acting under the authority of the RIC Police, a security division of the COMMISSION. Defendant VANN is sued herein in his individual and official capacities.

11.    Defendants JOHN DOE # 1 and JOHN DOE # 2, whose true identities are presently unknown, at all relevant times herein were law enforcement officers employed by and acting under the authority of the RIC Police, a security division of the COMMISSION. Defendants JOHN DOE # 1 and JOHN DOE # 2 are sued herein in both their individual and official capacities.  Defendants JOHN DOE #1 and JOHN DOE #2, and Defendant CALVIN VANN, are referred to collectively as the "Officers".

## IV. <u>FACTUAL ALLEGATIONS</u>

12.    Plaintiff is, and was at all relevant times, a student at the University of Cincinnati who maintains a permanent residence with his family in Charlottesville, Virginia.

13.    TSA is the government agency charged with and empowered by law to maintain and monitor the security of commercial air travel in the United States.

14.    In connection with its duties, TSA conducts screening and searches of airline passengers at airports, including RIC.

15.    In the aforesaid screening activities, TSA has implemented a policy of selecting, at random, passengers for enhanced secondary screening.

16.     Under TSA's enhanced secondary screening policy, passengers are offered a choice of submitting to either (a) an Advanced Imaging Technology scan (AIT), which produces a highly detailed picture of the passenger's unclothed body; or (b) a full-body pat-down search, which involves TSA agents using the front of their hands to feel the passenger's body.

17.     Airport screenings at airports like RIC are conducted pursuant to a policy implemented by Defendants NAPOLITANO and PISTOLE and/or agencies or personnel under their supervision and control, known as TSA Management Directive No. 100.4 dated September 1, 2009, the explicit purposes of which are "to prevent, protect against or respond to acts of terrorism and to protect persons, facilities and critical infrastructure as part of a layered security system in all modes of transportation," including checkpoint screening "to find explosives, incendiaries, weapons or other items and screening to ensure that an individuals identity is appropriately verified and checked against government watch lists."

18.     TSA Management Directive No. 100.4 authorizes administrative and special needs searches to include "checkpoint screening" and "ADASP/Playbook Screening."

19.     Under TSA Management Directive No. 100.4, "[a]ll administrative and special needs searches should be conducted according to established procedures to ensure that searches will be confined in good faith to their intended purpose" which include the objectives of enhancing "the security of persons and critical infrastructure," eliminating "the threat item(s) that are the target of the search," as well as tailoring searches "to protect personal privacy."

7

20.    TSA and the COMMISSION have entered into agreements under which the COMMISSION agrees to make law enforcement officers of the COMMISSION available to TSA to be stationed at RIC to enforce the regulations, policies, practices, customs and/or protocols of Defendants NAPOLITANO, PISTOLE and the COMMISSION and/or other applicable law.

21.    The agreements between TSA and the COMMISSION include a Memorandum of Agreement between TSA and the COMMISSION which by its terms creates responsibility for TSA "[t]o provide guidance as to the process and procedures necessary to implement the Playbook Concept," and further establishes a process by which TSA and the COMMISSION "will act collaboratively for the purpose of combining layers of security and coordinating the assets of TSA, law enforcement, and other security partners at the airport to improve the overall airport security posture."

22.    The TSA/COMMISSION Memorandum of Agreement provides that it is the responsibility of the COMMISSION "to actively participate in the collaborative coordination of security countermeasures" and "to assign airport resources, when available and appropriate, to execute agreed upon Plays."

23.    Under TSA/COMMISSION Memorandum of Agreement and other agreements, TSA, RIC and Henrico County, Virginia, Police law enforcement officers work collaboratively for the purpose of providing security at RIC.

24.    TSA has agreed to provide compensation to the COMMISSION for the provision of law enforcement officers at security screening areas at RIC.

## A. Facts Regarding December 30, 2010 Incident at RIC

25.     On December 30, 2010, at approximately 2:00 p.m., Plaintiff entered the security checkpoint at RIC for a scheduled flight to Wisconsin, to attend his grandfather's funeral.

26.     In anticipation of the possibility that he would be randomly selected for enhanced secondary screening, Plaintiff had written the following message in black marker on his chest to communicate his objection to the enhanced secondary screening implemented by TSA: "AMENDMENT 4: THE RIGHT OF THE PEOPLE TO BE SECURE AGAINST UNREASONABLE SEARCHES AND SEIZURES SHALL NOT BE VIOLATED."

27.     To avoid the possibility of causing delay for his fellow passengers, Plaintiff waited for the number of people in line to diminish before entering the area at RIC established for TSA security screening.

28.     Plaintiff entered the area for security screening and submitted his boarding pass and identification to the pre-screening agent.

29.     Upon being cleared by the pre-screening agent, Plaintiff proceeded to the conveyor belt area and as directed placed his belt, shoes, wallet, phone, computer, carry-on bag and sweatshirt on the conveyor belt.

30.     Upon reaching the passenger screening location, a TSA agent directed Plaintiff away from the magnetometer (a metal detector used by TSA as the primary screening apparatus) and toward an AIT unit.

31.     Before entering the AIT unit, Plaintiff removed his T-shirt and sweatpants, and placed them on the conveyor belt and stood in athletic running shorts, revealing a

message written on his chest to TSA screening agents and other persons present while he awaited enhanced screening.

32.     Defendant JOHN SMITH  then informed Plaintiff that removal of clothing was not necessary, but Plaintiff responded that he wished to do so to express his view that enhanced screening procedures were not constitutional.

33.     Defendant JOHN SMITH then suspended all screening in the area, directed Plaintiff to stay where he was in front of the AIT unit, and radioed for assistance.

34.     Shortly thereafter, Defendants CALVIN VANN and JOHN DOE # 1 arrived at the area where Plaintiff had been ordered detained by Defendant Smith and approached Plaintiff from behind his field of vision.

35.     Without warning and without questioning the Plaintiff, one of the Defendant Officers immediately seized Plaintiff from behind and forced him through the AIT unit, escorting him to a side area where the Plaintiff was handcuffed with his arms behind his back and was informed that he was being placed under arrest for allegedly "creating a public disturbance."

36.     One of the Defendant Officers then collected Plaintiff's belongings with assistance from Defendant JOHN SMITH or other TSA agents.

37.     Upon information and belief, at no time did Defendant JOHN SMITH or any other TSA agent intervene and/or communicate with the Officers to explain the extent of the screening conducted with regard to Plaintiff, and/or to explain the limited purposes and/or permissible limits of the TSA screening procedure, and/or to provide exculpatory information to said Defendant Officers that Plaintiff had not engaged in any

criminal conduct or in any conduct that would require his arrest and/or imprisonment and/or prosecution under TSA Management Directive No. 100.4 or any other law.

38.     Upon information and belief, Defendant JOHN SMITH did not seek assistance from any Federal Air Marshall or TSA law enforcement officer for appropriate follow-up, if any, including conducting a screening interview of Plaintiff based upon the screening that had occurred to the time of Plaintiff's arrest by the Defendant Officers.

39.     After informing Plaintiff that he was under arrest, one of the Defendant Officers took Plaintiff in handcuffs to the airport police station located under the center of the main RIC concourse.

40.     At the airport police station, several officers, including Defendant Officers and Defendant VANN, proceeded to question Plaintiff.

41.     Plaintiff was questioned concerning his age, residency, and education, and in the process the interrogators sought to intimidate Plaintiff, accusing him of being inconsiderate of other travelers, suggesting that his conduct would blow up in his face and have repercussions, and informing him that they would make sure that he would have a permanent criminal record as a result of his actions.

43.     Upon learning that he was a student at the University of Cincinnati, one of Defendant Officers continued the pattern of intimidation and threatened that they would inform the University of Cincinnati police department that one of its students had been arrested.

44.     During the questioning, one of Defendant Officers told Plaintiff that by purchasing a ticket and commencing the screening procedure, he had surrendered his Fourth Amendment rights and consented to a search of his person.

45.   One of Defendant Officers then indicated that they were doing a background check on Plaintiff.

46.   One of Defendant Officers also took photographs of Plaintiff and the message he had written on his chest.

47.   One of Defendant Officers informed Plaintiff that he would be held at the RIC police station until he could be transported to the Henrico County jail to meet with the local magistrate.

48.   In the interim, one of Defendant Officers conducted a complete search of Plaintiff's belongings.

49.   One of the Defendant Officers also directed Plaintiff to surrender his student identification card, telling him that the RIC police would be informing the University of Cincinnati Police of his arrest.

50.   Upon information and belief, one of the Defendant Officers and/or their supervisors contacted the University of Cincinnati Police and informed them of Plaintiff's arrest and prosecution and suggested that the University Police notify the Dean of Students in an attempt to defame the name and good reputation of Plaintiff in his academic pursuits and within the University community.

51.   One of Defendant Officers searched Plaintiff's belongings a second time and catalogued items to be held while he was transported to the Henrico County Jail.

52.   Upon information and belief, Defendant VANN then sorted through Plaintiff's belongings, selected out his toothbrush, deodorant, the t-shirt Plaintiff had removed prior to AIT screening, pens, and a highlighter, and stated that these items

would be considered contraband at the Henrico County Jail, and thereafter unilaterally discarded them into a trash bin.

53.     After another ten minutes, one of Defendant Officers informed Plaintiff that he had spoken with the magistrate and Plaintiff would not have to be transported to the jail, but Plaintiff would be given a court date in the near future when he would be arraigned.

54.     After spending approximately one and one-half hours in handcuffs with arms behind his back, and wearing only running shorts and socks in the cold environment of the police station, without any relief, one of Defendant Officers removed the handcuffs and directed Plaintiff to put his clothing back on.

55.     One of Defendant Officers told him that he would be allowed to leave for his flight after he spoke with an Air Marshal from the Federal Air Marshal's Joint Terrorism Task Force.

56.     At this time, Defendant VANN delivered Plaintiff's summons form charging Plaintiff with disorderly conduct in a public place in violation of Va. Code § 18.2-415.

57.     Defendant VANN explained the summons to Plaintiff, along with the nature of the crime with which he was being charged, and the consequences of failing to appear in court.

58.     At Defendant VANN's command, Plaintiff signed the summons statement, which required that he be present in Henrico General District Court at 9:00 a.m. on January 10, 2011.

59.     Plaintiff was then ordered by one of Defendant Officers to repack his belongings, though none of the Defendant Officers ever retrieved or returned to Plaintiff the alleged "contraband" items Defendant VANN discarded into the trash.

60.     Shortly thereafter, a Federal Air Marshal, arrived and, after speaking with the other officers for several minutes, met with Plaintiff in a small room.

61.     The Federal Air Marshal asked Plaintiff about his affiliation with, or knowledge of, any terrorist organizations, if he had been asked to do what he did by any third party, and what his intentions and goals were.

62.     The Federal Air Marshal discussed with Plaintiff the necessity of current screening procedures.

63.     After questioning by the Federal Air Marshall, Plaintiff was directed by the Defendant Officers to take his belongings and was released into the terminal to go through security a second time.

64.     This time, TSA officers directed Plaintiff through the magnetometer and he boarded his flight without incident.

65.     At all times on December 30, 2010, during the separate screening procedures and while in custody and during police questioning, Plaintiff remained quiet, composed, polite, cooperative and complied with the requests of agents and officers.

66.     At all times on December 30, 2010, Plaintiff never observed any visible agitation among or disruption of the other passengers during any of the separate screening procedures and/or while in custody in public view at RIC.

## B. Airport Rules and Regulations and
### the Virginia Disorderly Conduct Statute

67.     Plaintiff's silent, nonviolent protest against TSA security proceedings was not contrary to rules and regulations promulgated by Defendant COMMISSION governing activity at RIC.

68.     Such rules and regulations authorize the exercise of First Amendment expression, including political expression, by allowing picketing and hand billing to take place at RIC.

69.     Additionally, such rules and regulations permit persons to engage in solicitation of funds from the general public, so long as there is not a face-to-face request for an immediate donation.

70.     Additionally, at the time of the incident, and at other times approximate thereto, Defendant COMMISSION permitted a variety of speech activities at RIC, including without limitation, airport and non-airport related speech, individual symbolic speech, individual speech, including speech on clothing, and commercial speech, including without limitation numerous large advertisements and other pictorial and graphic displays and publications in and around the RIC terminal, concourse and screening areas, of bare-chested persons, persons in bathing suits, and persons dressed in running shorts and other athletic apparel.

71.     Va. Code § 18.2-415 provides, in pertinent part, that a person is guilty of disorderly conduct, punishable as a Class I misdemeanor, if in any public building or public place, "with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he "engages in conduct *having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is*

15

*directed*[.]" (emphasis added). Section 18.2-415 also provides that disorderly conduct "shall *not* be deemed to include the utterance or display of any words[.]" (emphasis added).

72.     At all times at RIC during the events described in this Complaint, Plaintiff did not engage in any conduct having any tendency to cause any acts of violence by any reasonable person or persons at RIC, nor did he intend to cause, or cause, any public inconvenience, annoyance or alarm, or recklessly creat[e] a risk thereof.

## C. Henrico County Court Proceedings

73.     On January 10, 2010, Plaintiff appeared in Henrico General District Court as required by the summons issued him at RIC on December 30, 2010.

74.     At that hearing, the Commonwealth Attorney for the County of Henrico moved that a *nolle prosequi* be entered on the charge against Plaintiff.

75.     Upon information and belief, the Commonwealth Attorney admitted  that there was insufficient evidence to sustain a charge under Va. Code § 18.2-415 against Plaintiff on the basis of the incident that occurred at RIC on December 30.

76.     The Court granted the request of the Commonwealth Attorney and entered a *nolle prosequi* on the charge set forth in the summons.

## D. The Defendants' Policies And Actions Taken Pursuant Thereto

77.     In all respects set forth in this Complaint the Defendants acted under color of the law of the Commonwealth of Virginia and/or the law of the United States of America.

78. Plaintiff's message regarding the Fourth Amendment of the United States Constitution is clearly within the confines of protected speech under the First Amendment.

79. By removing unnecessary clothing prior to entering the AIT device, Plaintiff displayed the text of the Fourth Amendment painted on his chest, thereby facilitating and highlighting his objection to the search ordered by TSA by engaging in legitimate political expression to protest peacefully airport screening which he believed violated the Fourth and Fourteenth Amendments of the United States Constitution, and further, petitioning Defendant NAPOLITANO and/or PISTOLE, in an area within the jurisdiction of their respective agencies, to take action to implement less intrusive screening policies and procedures that respect the constitutional rights of American citizens.

80. The discrimination against Plaintiff's expression and display of the message regarding the Fourth Amendment of the United States Constitution is unreasonable and constitutes unlawful viewpoint discrimination as against expressive activity permitted at RIC.

81. Plaintiff alleges, upon information and belief, that Defendants and/or their agents knowingly, willfully and intentionally, and/or carelessly and negligently, failed to prevent, and continue to fail to prevent, Defendants VANN, DOE #1, and DOE #2 from prohibiting or interfering with Plaintiff in the exercise of his First Amendment rights.

82. The message and the various media through which Plaintiff sought to communicate his message was, and is, unique to the location in question and alternate

methods were and are inadequate and unavailable for communicating this message to the intended audience on the day in question.

83.    Plaintiff's expressive activity was compatible with the uses of RIC and the nature of the forum was compatible with such expressive activity.

84.    By policy, custom and/or practice, Defendants unlawfully drew, or by failing to properly supervise train and instruction, permitted the other Defendants to draw, distinctions among the content and/or viewpoint(s) of various types of speech in the forum in question.

85.    By policy, custom and/or practice, Defendants NAPOLITANO, PISTOLE, COMMISSION, WILLIAMS and/or the other Defendants and/or their subordinates, have each permitted and/or authorized the uniformed officers and agents under their authority to enforce, or permit the enforcement of, or to request collaborative assistance in the enforcement of, the disorderly conduct and other inappropriate laws against Plaintiff for the purpose of discriminating as to Plaintiff's speech, and/or threaten to do so in the future.

86.    By the implementation of the aforesaid policies, customs and/or practices, Defendants NAPOLITANO, PISTOLE, COMMISSION, and WILLIAMS, and each of them, were deliberately indifferent in the supervision and training of their officers and agents with respect to the proper enforcement of the disorderly conduct statute and other laws in a manner which would avoid violating constitutionally protected rights of expression and/or in establishing protocols between and among the layered security and law enforcement services with jurisdiction at RIC in a manner that would sufficiently guarantee the protection of the constitutional rights of American citizens.

87.   By policy, custom and/or practice, Defendants NAPOLITANO, PISTOLE, COMMISSION, and WILLIAMS, and each of them, failed to execute and/or unlawfully delegated their respective affirmative constitutional duties to promulgate and/or enforce regulations, policies, procedures, practices, customs and protocols, and to properly train and supervise the officers acting under their authority, to meet and satisfy constitutional standards in carrying out their duties (1) by vesting standardless discretion in police officers and/or other agents or private parties based upon personal predilections and whim, and/or (2) by permitting agents and/or private parties to make unlawful distinctions based on the content or viewpoint of speech and/or (3) by substantially burdening Plaintiff's exercise of his speech without any compelling governmental interest.

88.   The actions of Defendants were taken pursuant to Defendants policies, customs and/or practices and were authorized, sanctioned, implemented, permitted and ratified by officials functioning at a policy making level.

### E. Collateral Allegations

89.   Defendants and their agents, under color of law and of the policies, customs and practices of Defendants NAPOLITANO, PISTOLE, COMMISSION, and WILLIAMS have knowingly, willfully and intentionally threatened and continue to threaten Plaintiff's exercise of his constitutional rights and have arbitrarily and capriciously discriminated against Plaintiff and his ideas, concepts and viewpoints, in violation of his rights to Free Speech and Equal Protection of the law guaranteed by the First and Fourteenth Amendments to the United States Constitution.

90.     The willful and wanton actions of Defendants indicated a reckless or callous disregard of, or deliberate indifference to, the rights of others as to constitute gross negligence.

91.     The actions of Defendants violated clearly established constitutional rights of which a reasonable person would have known and constituted an abuse of government power.

92.     The actions of Defendants DOE #1, DOE #2, and VANN were done in collaboration with, and with the active participation, knowledge and/or acquiescence of all Defendants, or otherwise in breach of their duty.

93.     As written and applied, Defendants' policies, customs and/or practices permit the exercise of standardless discretion by individual police officers resulting in impermissible content and/or viewpoint discrimination among different forms of ideological, social, economic, philosophical, political and religious speech.

94.     As written and as applied, Defendants' policies, customs and/or practices do not further any important, substantial or compelling governmental interests and fail to employ the least restrictive means of restricting First Amendment interests while furthering whatever governmental interests, if any, Defendants seek to advance.

95.     Plaintiff has no plain, adequate or complete remedy at law to redress these wrongs, and this suit is the only means of securing adequate relief.

96.     Plaintiff anticipates taking flights from RIC and/or other major United States airports and is now suffering and will continue to suffer irreparable injury based on the improper and undue chilling of his rights under the First Amendment, and his unequal treatment under the Fourteenth Amendment, of the United States Constitution, from

20

Defendants' policies, practices, customs, usages and actions as set forth herein until enjoined by the court.

97.     As a direct and proximate result of the actions of Defendants, Plaintiff has suffered personal injury for which compensatory damages are due and has been denied his constitutional rights.

## V. CLAIMS

### First Claim
Deprivation of Fourth Amendment Rights
42 U.S.C. § 1983 and *Bivens*

98.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 97 set forth above.

99.     Defendants SMITH, VANN, DOE #1, and DOE #2, acting individually or in concert, arrested Plaintiff, and/or collaborated in causing his arrest and seizure, without probable cause to believe he had violated any law and in so doing deprived Plaintiff of his right to be free of unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

100.    Defendants NAPOLITANO, PISTOLE, COMMISSION, and WILLIAMS have each failed, and/or have been deliberately indifferent, in their respective duties to train, supervise and oversee the personnel acting under their authority so as to avoid the improper arrest of Plaintiff without probable cause to believe he had violated any law, and by their failure to do so were the proximate cause of depriving the Plaintiff of his right to be free of unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

101.    In depriving Plaintiff of his rights under the Fourth Amendment, Defendants acted under color of state law and/or federal law.

102.    As a direct and proximate result of Defendants' deprivation of Plaintiff's Fourth Amendment rights, Plaintiff suffered unnecessary physical discomfort, humiliation, embarrassment, and mental suffering.

103.    For this deprivation of his constitutional rights under color of law, Plaintiff is entitled to appropriate relief under 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Named Agents of the Federal Bureau of* Narcotics, 403 U.S. 388 (1971), for the damage caused by such deprivation.

### Second Claim
Deprivation of First and Fourteenth Amendment Rights
42 U.S.C. § 1983 and *Bivens*

104.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 103 set forth above.

105.    Defendants SMITH, VANN, DOE #1, and DOE #2, acting individually or in concert, seized Plaintiff, or in collaboration with others caused his seizure, without probable cause because of the message conveyed by Plaintiff's silent, nonviolent expression of objection to the TSA's screening policies that involve random application of AIT or enhanced pat-down procedures, and thereby engaged in content and/or viewpoint discrimination and deprived Plaintiff of his fundamental right to engage in free speech on an equal basis with other citizens, to petition the government for the redress of grievance, and to engage freely in political expression as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

106.    Defendants NAPOLITANO, PISTOLE, COMMISSION, and WILLIAMS have each failed, and/or have been deliberately indifferent, in their respective duties to train, supervise and oversee the personnel acting under their authority so as to avoid improper discrimination by the Defendant officers among the content and/or viewpoint(s) of various types of speech at RIC and/or to permit the lawful expression, and by their failure to do so were the proximate cause of depriving the Plaintiff of his right free speech and equal protection of the law guaranteed by the First and Fourteenth Amendments to the United States Constitution..

107.    In depriving Plaintiff of his rights under the First and Fourteenth Amendments, Defendants acted under color of state law and/or federal law.

108.    As a direct and proximate result of Defendants' deprivation of Plaintiff's First and Fourteenth Amendment rights, Plaintiff suffered unnecessary physical discomfort, humiliation, embarrassment, and mental suffering.

109.    For this deprivation of his constitutional rights under color of law, Plaintiff is entitled to relief under 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the damage caused by such deprivation.

### Third Claim
Deprivation of Fifth and Fourteenth Amendment Equal Protection Rights
42 U.S.C. § 1983 and *Bivens*

110.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 109 set forth above.

111.    Defendant SMITH, acting individually and/or in concert with Defendants VANN, DOE #1, and/or DOE #2, exceeded the authority granted by TSA Management

Directive No. 100.4, and authorizing statutes and regulations, concerning the limited purpose of administrative and special needs searches conducted in airport screenings and thereby arbitrarily, capriciously and without rational basis, treated Plaintiff differently from other air travelers subject to the same screening process, by failing to follow applicable security Plays, and to prevent Plaintiff's unlawful arrest and false imprisonment without probable cause by Defendants VANN, DOE #1 and/or DOE #2, thereby denying Plaintiff his right to equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution.

112.    The application of TSA Management Directive No. 100.4, and authorizing statutes and regulations, to Plaintiff by Defendant SMITH, and collaboratively by Defendants VANN, DOE #1, and/or DOE #2, exceeded the authorized purposes of said directive, statutes and regulations and thereby denied Plaintiff his right to equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution.

113.    Defendants NAPOLITANO, PISTOLE, COMMISSION, and WILLIAMS have each failed, and/or have been deliberately indifferent, in their respective duties to train, supervise and oversee Defendants SMITH, VANN, DOE #1, and DOE #2, and/or other personnel acting under their authority to be aware of, and to follow the authorized limited purposes of TSA Management Directive No. 100.4, and authorizing statutes and regulations, and/or cooperative agreements between their respective agencies, so as to avoid the denial of Plaintiff to equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution.

114.   In depriving Plaintiff of his rights under the Fifth and Fourteenth Amendments, Defendants acted under color of state law and/or federal law.

115.   As a direct and proximate result of Defendants' deprivation of Plaintiff's Fifth and Fourteenth Amendment rights, Plaintiff suffered unnecessary physical discomfort, humiliation, embarrassment, and mental suffering.

116.   For this deprivation of his constitutional rights under color of law, Plaintiff is entitled to relief under 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the damage caused by such deprivation.

<u>**Fourth Claim**</u>
False Imprisonment

117.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 116 set forth above.

118.   Defendants VANN, DOE #1, and DOE #2 arrested, and/or physically restrained and detained, Plaintiff by force and/or threats continuously, and without probable cause or other legal justification.

119.   Plaintiff was thereby falsely imprisoned by Defendants VANN, DOE #1, and DOE #2.

120.   As a direct and proximate result of Defendants tortious conduct, Plaintiff suffered unnecessary physical discomfort, humiliation, embarrassment, and mental suffering for which he is entitled to recover damages under the laws of the Commonwealth of Virginia.

## Fifth Claim
Malicious Prosecution

121.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 thorough 120 set forth above.

122.    Defendants VANN, DOE #1, and DOE #2, procured and/or instituted, and/or or collaborated in procuring or instituting, the prosecution of Plaintiff for disorderly conduct without probable cause and with malice based on the said Defendants' actions taken against Plaintiff, including without limitation Plaintiff's expression of opposition to TSA enhanced screening procedures and his rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

123.    The prosecution of Plaintiff for disorderly conduct terminated in a manner not unfavorable to Plaintiff when the Commonwealth Attorney procured the entry of a *nolle prosequi* evidencing the Commonwealth's unwillingness to proceed on the charge.

124.    Plaintiff was thereby subjected to a malicious prosecution instituted by Defendants VANN, DOE #1, and DOE #2.

125.    As a direct and proximate result of Defendants tortious conduct, Plaintiff suffered unnecessary physical discomfort, humiliation, embarrassment, and mental suffering for which he is entitled to recover damages under the laws of the Commonwealth of Virginia.

## VI. Need for Relief

126.    Plaintiff seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202, declaring the rights of the parties hereto, including specifically, without limitation, a declaratory judgment (a) that the application of TSA Management Directive No. 100.4, and authorizing statutes and regulations, to Plaintiff

exceeded the authorized purposes of said directive, statutes and regulations, and thereby denied Plaintiff his right to equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution, and (b) that the aforementioned application and the unlawful search and seizure and false imprisonment of Plaintiff denied Plaintiff the exercise of his constitutional rights under the First Amendment of the United States Constitution and the Constitution of Virginia.

127.   Plaintiff alleges and avers that the granting of a declaratory judgment and the aforesaid injunction will serve a useful purpose in clarifying and settling the legal relations in issue, will terminate the uncertainty, insecurity and controversy giving rise to this action and to the lawful exercise of Plaintiff's and others constitutional rights and will eliminate the threat and fear or events of arrest, incarceration, criminal prosecution and/or conviction for the exercise of such rights.

128.   Plaintiff is entitled to nominal and compensatory damages for the intentional or negligent violation of his constitutional rights by Defendants, as well as his reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.   That judgment be entered finding in favor of Plaintiff on each of the claims set forth above.

B.   That the Court declare the rights of the parties hereto, including without limitation a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, declaring, specifically, that (a) the arbitrary, capricious and unreasonable application of TSA Management Directive No. 100.4, and authorizing statutes and

27

regulations, to Plaintiff by Defendant SMITH, and collaboratively by Defendants VANN, DOE #1, and/or DOE #2, exceeded the authorized purposes of said directive, statutes and regulations, and thereby denied Plaintiff his right to equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution, and (b) the aforementioned application of TSA Management Directive No. 100.4, and the unlawful search and seizure and false imprisonment of Plaintiff by Defendants VANN, DOE #1, and/or DOE#2 denied Plaintiff the exercise of his constitutional rights under the First Amendment of the United States Constitution and the Constitution of Virginia because it fosters impermissible content and viewpoint discrimination and unlawfully chills Plaintiff's rights to Free Speech and to Petition the Government for the redress of grievances under the First Amendment.

C.     That the Court grant a permanent injunction prohibiting Defendants, their officers, employees, agents, successors or assigns, etc., and those persons in active concert or participation with them from interfering with Plaintiff's First Amendment rights of Free Speech and to Petition the Government for the redress of grievances, and his Fourteenth Amendment rights to Equal Protection of the law, and accordingly, that Defendants, and their agents, employees, servants, officers, attorneys, successors, assigns, and all others acting in concert or participation with them be forthwith:

1) enjoined and restrained from interfering with the exercise of the Free Speech rights of Plaintiff and others who desire to engage in lawful expressive activity at RIC;

2) enjoined and restrained from enforcing TSA Management Directive No. 100.4, and authorizing statutes and regulations, in a manner that denies

Plaintiff's rights thereunder and/or under applicable constitutional standards; and

3) enjoined to instruct, train and brief all security screening personnel, police officers, private security officers, agents, employees, servants and those persons in active concert or participation with Defendants at meetings or briefings prior to service at RIC concerning the proper boundaries of citizens' rights under the First, Fourth and Fourteenth Amendments of the United States Constitution with reference to screening activities at RIC and other airports, and the applicable law, facts and circumstances necessary to justify the arrest, seizure and/or charging of citizens with criminal offenses during the screening process at RIC and other airports, and further, to implement appropriate policies, procedures and protocols to supervise and train personnel to do so.

D.    That upon an appropriate hearing or hearings to cause a permanent injunction to issue incorporating the injunctions set forth in Sub-Paragraph C of this Prayer and further prohibiting Defendants, their officers, agents, servants, employees, successors or assigns, and those persons in active concert or participation with them, from taking any adverse action against Plaintiff for exercising his constitutional rights of Free Speech and to Petition the Government for the redress of grievances, and his constitutional right to Equal Protection of the law and his right to be fully admitted to and to enjoy the use of the services, facilities, privileges, advantages, and accommodations of the airport terminal at RIC on the same basis as other citizens without discrimination as to the content or viewpoint of his speech.

E.     That Plaintiff be awarded compensatory damages in the amount of $250,000.00 against Defendants SMITH, VANN, DOE #1, and/or DOE #2, in their individual capacities.

F.     That Plaintiff be awarded his attorneys' fees pursuant to 42 U.S.C § 1988, together with costs of this litigation.

G.     That the Court grant such other and further relief as it may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated: March 9, 2011

                              Respectfully Submitted,

By:     _____

James J. Knicely (VSB #19356)
Robert Luther III (VSB #78766)
KNICELY & ASSOCIATES, P.C.
487 McLaws Circle, Suite 2
Williamsburg, Virginia 23185
(757) 253-0026 (phone)
(757) 253-5825 (fax)
jjk@knicelylaw.com

Anand Agneshwar
Alan C. Veronick
ARNOLD & PORTER, LLP
399 Park Avenue
New York, New York 10022-4690
(212) 715-1000 (phone)
(212) 212-715.1399 (fax)
anand.agneshwar@aporter.com
*Of Counsel*

John W. Whitehead (VSB # 20361)
Douglas R. McKusick (VSB # 72201)
The Rutherford Institute

30

1440 Sachem Place
Charlottesville, Virginia 22906
*Of Counsel*

Participating Attorneys for
THE RUTHERFORD INSTITUTE

*Attorneys for Plaintiff, AARON TOBEY*