**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **AARON TOBEY**, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 3:11cv154-HEH |
| ) | |
| **JANET NAPOLITANO**, *et al.* ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION AND MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

James J. Knicely (VSB #19356)
Robert Luther III (VSB #78766)
KNICELY & ASSOCIATES, P.C.
487 McLaws Circle, Suite 2
Williamsburg, Virginia 23185
(757) 253-0026 (phone)
(757) 253-5825 (fax)
jjk@knicelylaw.com

*Of Counsel*:
Anand Agneshwar
Alan C. Veronick
ARNOLD & PORTER, LLP
399 Park Avenue
New York, New York 10022-4690
(212) 715-1000 (phone)
(212) 212-715.1399 (fax)
anand.agneshwar@aporter.com

John W. Whitehead (VSB # 20361)
Douglas R. McKusick (VSB # 72201)
The Rutherford Institute
1440 Sachem Place
Charlottesville, Virginia 22906
Participating Attorneys for
THE RUTHERFORD INSTITUTE

*Attorneys for Plaintiff, AARON TOBEY*

Dated: May 27, 2011

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL ALLEGATIONS ....................................................................................................3

STANDARD OF REVIEW .......................................................................................................6

ARGUMENT ..............................................................................................................................7

I. Plaintiff Has Alleged Sufficient Facts Demonstrating That the Official Policies, Customs, and/or Practices of the Commission and Its Policymaker Were the Cause of the Constitutional Deprivations in This Case. ................................................................................................................................7

    A. The Complaint Alleges That Plaintiff's Constitutional Deprivations Were the Result of the Commission's Policies, Customs, and/or Practices. ............................................................7

    B. The Complaint Alleges That Plaintiff's Constitutional Deprivations Were the Result of a Course of Action Taken and Directly Sanctioned by an Official Policymaker and Supervisor. ..................................................................................................9

    C. The Complaint Alleges That Plaintiff's Constitutional Deprivations Were the Result of a Failure to Train. ..................................11

    D. The Claims Against the Individuals in Their Official Capacities. .................................................................................................14

II. The State-Law Claims...................................................................................................14

III. The Filing of the Amended Complaint. ......................................................................14

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                                                  **PAGE(S)**

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ..................................................................................................10

*Avery v. Burke County*,
    660 F.2d 111 (4th Cir. 1981) ........................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................6,7

*Board of County Comm'rs of Bryan County v. Brown*,
    520 U.S. 397 (1997) ....................................................................................................12

*City of Canton v. Harris*,
    489 U.S. 378 (1989) ...............................................................................................11,12

*Cohen v. California*,
    403 U. S. 15 (1971) .....................................................................................................13

*Corbin v. Woolums*,
    No. 3:08-Civ-173, 2008 WL 5049912 (E.D. Va. Nov. 25, 2008) ..............................2,9

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ........................................................................................7

*Harden v. Montgomery County*,
    No. 8:09-CV-031666, 2010 WL 3938326 (D. Md. Oct. 6, 2010) ...............................15

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ......................................................................................................6

*Johnson v. City of Richmond, Va*,
    No. 3:04-Civ-340, 2005 WL 1793778 (E.D. Va. June 24, 2005) ................................10

*McCall v. City of Portsmouth*,
    No. 2:07cv339, 2007 WL 3025359 (E.D. Va. Oct. 12, 2007) .......................................7

*Monell v. Dep't of Social Servs.*,
    436 U.S. 658 (1978) ................................................................................................2,8,9

*Pachaly v. City of Lynchburg*,
    897 F.2d 723 (4th Cir. 1990) ........................................................................................2

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)..................................................................................................2,9,10

*Republican Party of NC v. Martin*,
   980 F.2d 943 (4th Cir. 1992) .........................................................................................6,7

*Revene v. Charles County Comm'rs*,
   882 F.2d 870 (4th Cir. 1989) ........................................................................................6,10

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974)......................................................................................................6,7

*Scinto v. Preston*,
   170 Fed. Appx. 834 (4th Cir. 2006)..................................................................................6

*Shaw v. Stroud*,
   13 F.3d 791 (4th Cir. 1994) ............................................................................................10

*Simpson v. Univ. of Colo.*,
   500 F.3d 1170 (10th Cir. 2007) ................................................................................ 12-13

*Smith v. Goguen*,
   415 U.S. 566 (1974)........................................................................................................13

*Spell v. McDaniel*,
   824 F.2d 1380 (4th Cir. 1987) ....................................................................................8,10

*Spell v. McDaniel*,
   591 F. Supp. 1090 (E.D.N.C. 1984)...............................................................................10

*Venkatraman v. REI Sys., Inc.*,
   417 F.3d 418 (4th Cir. 2005) ............................................................................................7

*Wellington v. Daniels*,
   717 F.2d 932 (4th Cir. 1983) ..........................................................................................10

*Woodward v. Corr. Med. Servs. of Ill., Inc.*,
   368 F.3d 917 (7th Cir. 2004) ..........................................................................................13

**STATUTES**                                                                                                          **PAGE(S)**

42 U.S.C. § 1983................................................................................................ *passim*

Fed. R. Civ. Pro. 12(b)(6) ......................................................................................7,14

Virginia Code 18.2-415 .............................................................................................6

## **PRELIMINARY STATEMENT**

On December 30, 2010, Plaintiff Aaron Tobey, decided to peacefully protest what he perceived to be invasive enhanced airport screening procedures at Richmond International Airport (RIC). When asked to walk through an advanced imaging screening unit at RIC, Plaintiff removed his shirt, sweatpants, and shoes, displaying the text of the Fourth Amendment on his chest. The Transportation Security Administration ("TSA") and the Capital Region Airport Commission (the "Commission") police then humiliated and punished him in direct retaliation for this protected act of peaceful protest, detaining and arresting him without probable cause, repeatedly searching his belongings, seizing and discarding certain of his personal effects, and charging him with a trumped up, meritless, charge of disorderly conduct which the prosecutor subsequently dismissed. With this lawsuit Plaintiff seeks to vindicate his First, Fourth, and Fourteenth Amendment rights.

By their motion, the Commission Defendants[1] ask this Court to dismiss Plaintiff's Section 1983 claim, on the theory that Plaintiff failed to plead "factual allegations of *other instances* of the Commission's constitutional abuses." Comm'n Defs. Br. at 5 (emphasis added). But the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and this Court, have soundly rejected such a limitation, expressly permitting municipal liability claims to proceed based upon a single official act or decision. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal

---

[1] The Commission Defendants include the Commission and Defendants Victor Williams ("Williams"), the Director of Public Safety and Operations at RIC; Colonel Quentin Trice ("Colonel Trice"), the Chief of the RIC Police; and Calvin Vann ("Vann"), Anthony Mason ("Mason"), and Jeffrey Kandler ("Kandler"), officers of the RIC, each acting in their official capacities.

policymakers under appropriate circumstances.") (discussing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)); *Pachaly v. City of Lynchburg*, 897 F.2d 723, 726 (4th Cir. 1990) ("The appellant contends, and we agree, that a single act by a municipality may give rise to civil liability if it is shown that the officials of the municipality responsible for establishing the challenged policy made a calculated choice to follow the course of action deemed unconstitutional.") (citing *Pembaur*, 475 U.S. at 480); *Corbin v. Woolums*, No. 3:08-Civ-173, 2008 WL 5049912, *10 (E.D. Va. Nov. 25, 2008) ("Municipal liability may be imposed for even a single decision by municipal policymakers under appropriate circumstances.") (citing *Pembaur*, 475 U.S. at 480).

The Plaintiff's First Amended Complaint[2] clearly and specifically alleges facts which if true would constitute a Section 1983 violation by the Commission and its official actor. The Amended Complaint plainly contends that the Commission, through its agreements with TSA and the actions of its policymaking officials, has adopted policies, customs, and practices related to passenger screening, security collaboration and coordination, and "security plays" to be made by TSA officers and RIC police that directly caused Plaintiff's constitution deprivations. Plaintiff's Complaint fairly alleges that the Commission's failure to train and supervise RIC police officers was so obvious that it demonstrates deliberate indifference to the constitutional rights of Plaintiff and

---

[2] With the consent of Defendants' counsel and pursuant to the Order entered on May 17, 2011, Plaintiff filed a First Amended Complaint with this Court, concurrently with the filing of its Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss. The paragraph numbering and allegations contained in the First Amended Complaint, which will be referenced in this Memorandum, remain the same as the original Complaint except for allegations identifying the "John Doe" Defendants and identifying with more specificity the "John Smith" Defendants by separate pseudonyms. Plaintiff is also filing concurrently with the Clerk of this Court a motion to file under seal, pursuant to agreement of counsel, an identical copy of the First Amended Complaint containing the true identities of the "John Smith" Defendants, together with a sealed envelope containing such First Amended Complaint.

other airline passengers at RIC. Accordingly, the Commission Defendants' motion to dismiss should be denied.

## FACTUAL ALLEGATIONS

The Commonwealth of Virginia has granted authority to the Commission to operate, manage, and regulate RIC. Amend. Comp. ¶ 7. The Commission's responsibilities include promulgating and enforcing rules and regulations governing the activities at RIC. *Id.* Colonel Quentin Trice, the Chief of the RIC Police, is the principal supervisor of day-to-day operations of the RIC police force and responsible "for the management, direction and supervision of the RIC Police and all police officers" employed by the Commission. He shares with Defendant Victor Williams, the Director of Public Safety and Operations of the Commission, responsibility "for the development, promulgation, approval and implementation of all programs, policies, practices, procedures, customs and protocols of the RIC Police including, without limitation, the training and supervision of its police officers, and the operations and interactions of the RIC Police officers with other security personnel and agencies exercising security functions at RIC." *Id.* ¶¶ 8, 11. Defendants Vann, Mason, and Kandler are RIC Police officers. *Id.* ¶¶ 10-11.

The TSA is the government agency charged and empowered by law to maintain and monitor the security of commercial travel in the United States. *Id.* ¶ 13. In this capacity, TSA conducts screening and searches of airline passengers at airports, including RIC. *Id.* ¶ 14. TSA's screening activities are governed by TSA Management Directive No. 100.4, which establishes a regime and protocol for passenger screening designed to protect against terrorism and "to find explosives, incendiaries, weapons or other items

and screening to ensure that an individual[']s identity is appropriately verified and checked against government watch lists." *Id.* ¶¶ 15-18.

TSA and the Commission have entered into agreements under which the Commission makes its law enforcement officers available to TSA to enforce the TSA's and the Commission's regulations, policies, practices, customs, and protocols at RIC. *Id.* ¶¶ 7, 20, 23. The agreements include a Memorandum of Agreement requiring TSA "[t]o provide guidance as to the process and procedures necessary to implement the Playbook Concept," and establishing a process by which TSA and the Commission "will act collaboratively for the purpose of combining layers of security and coordinating the assets of TSA, law enforcement, and other security partners at the airport to improve the overall airport security posture." *Id.* ¶ 21. Under the Memorandum of Agreement, the Commission has responsibility "to actively participate in the collaborative coordination of security countermeasures" and "to assign airport resources, when available and appropriate, to execute agreed upon Plays." *Id.* ¶ 22.

These rules, procedures and protocols were in effect on December 30, 2010, when Plaintiff Aaron Tobey, a Charlottesville, Virginia resident studying architecture at the University of Cincinnati, sought to fly from RIC to his grandfather's funeral in Wisconsin. *Id.* ¶ 25. Anticipating being selected for enhanced electronic body scanning or pat down procedures that he believed were unconstitutionally intrusive, Plaintiff decided to make his views known — writing the text of the Fourth Amendment in black marker on his chest. *Id.* ¶ 26. When he reached the passenger screening location and placed his belongings on a conveyor belt, Defendant Rebecca Smith diverted him to an Advanced Imaging Technology ("AIT") scanning unit. *Id.* ¶¶ 27-30. Before entering the

AIT scanning unit, Plaintiff removed and placed his t-shirt and sweatpants on the conveyor belt. He stood in athletic running shorts and socks, revealing the "protest language" on his chest. *Id.* ¶ 31. When told that he did not need to remove his clothing, Plaintiff responded that he wished to do so to express his belief that enhanced screening procedures were unconstitutional. *Id.* ¶ 32. At that point, Defendant Smith radioed for assistance and Defendants Vann and Mason arrived. Vann, at the urging of Defendant Mason, accosted Plaintiff from behind, handcuffed him, pushed him through the AIT device, and arrested him for "creating a public disturbance." *Id.* ¶¶ 33-35.

Vann then took Plaintiff to the airport police station, located under the center of the main RIC concourse. *Id.* ¶ 39. There, several officers, including Vann, questioned, bullied and argued with him about his protest. *Id.* ¶ 40-41. They told him ominously that his conduct would have repercussions, threatened that they would make sure he would have a permanent criminal record, and for no discernible legitimate reason reported the incident by phone to the University of Cincinnati police. *Id.* ¶¶ 41-43, 50. One of the Defendant Officers told Plaintiff that by purchasing a ticket and commencing a screening procedure, he had surrendered his Fourth Amendment rights. *Id.* ¶ 44. They told him they were taking him to the Henrico County jail, and removed and discarded certain of his personal belongings which were declared to be "contraband." *Id.* ¶¶ 48, 51-53.

Plaintiff spent one and one-half hours in handcuffs with arms behind his back, wearing only running shorts and socks in the cold airport police station. Finally the officers informed Plaintiff that he could leave for his flight after he spoke with an Air Marshal from the Federal Air Marshal's Joint Terrorism Task Force. *Id.* ¶¶ 54-55. Once the Air Marshal completed his questioning, Defendants released him, but not before

charging him with disorderly conduct in a public place in violation of Virginia Code 18.2-415. *Id.* ¶¶ 56, 63. The Commonwealth Attorney for Henrico County, Virginia subsequently dropped the charge, admitting there was no evidence to sustain it. *Id.* ¶ 75.

## STANDARD OF REVIEW

A motion to dismiss a claim under 42 U.S.C. § 1983 "should not be granted unless it appears beyond doubt that the plaintiff *can prove no set of facts* to support h[is] allegations." *Revene v. Charles County Commissioners*, 882 F.2d 870, 872 (4th Cir. 1989) (emphasis added) (internal citations omitted). As the United States Supreme Court explained in *Scheuer v. Rhodes*, 416 U.S. 232 (1974),

> [w]hen a federal court reviews the sufficiency of a [§ 1983] complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Id.* at 236, *abrogated on other grounds by*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 584 (2007) (affirming decision not to expand pleading requirements beyond the limits of the Federal Rules); *Scinto v. Preston*, 170 Fed. Appx. 834, 836 (4th Cir. 2006) (stating that "where the face of the pleadings tends to show that recovery would be very remote and unlikely, a complaint cannot be dismissed unless there is *no set of facts* in support of the claim which would entitle the plaintiff to relief") (emphasis added) (quoting *Scheuer*); *Revene*, 882 F.2d at 872 (quoting *Scheuer* for the proposition quoted above).

A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of NC*

*v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The complaint's allegations are taken as true and all reasonable factual inferences should be construed in the plaintiff's favor. *See McCall v. City of Portsmouth*, No. 2:07cv339, 2007 WL 3025359, *3 (E.D. Va. Oct. 12, 2007) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff."). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## ARGUMENT

**I.     Plaintiff has Alleged Sufficient Facts Demonstrating That the Official Policies, Customs, and/or Practices of the Commission and Its Policymaker Were the Cause of the Constitutional Deprivations in This Case.**

The Commission Defendants argue that Plaintiff has failed to state a Section 1983 claim because he has not alleged multiple instances of constitutional violations. The Commission Defendants ignore a wealth of precedent squarely holding that in some circumstances a plaintiff can succeed on a Section 1983 claim based on a single act or "decision" by a municipality, including its policymakers. *See*, *supra*, at p. 2. Properly evaluated, Plaintiff's Amended Complaint alleges policies, customs, and/or practices that resulted in constitutional deprivations. Accordingly, whether Plaintiff ultimately will prevail cannot and should not be decided on a motion to dismiss.

**A.     The Complaint Alleges That Plaintiff's Constitutional Deprivations Were the Result of the Commission's Policies, Customs, and/or Practices.**

The Commission Defendants do not contend that their officers' actions complied with the Constitution. Instead, they take Plaintiff to task for not identifying a

Commission *policy* that authorizes its employees to commit constitutional violations. They also contend that because one of their policies pays lip service to the First Amendment, they are not liable for First Amendment violations. It is beyond peradventure, however, that the Commission's policies, customs, or practices *either* sanctioned unconstitutional conduct, *or* were lacking in standards as to be constitutionally infirm.

*First*, a local authority can be held liable under Section 1983 for ordinances, regulations, and official acts adopted by its governing body "which directly command or authorize constitutional violations." *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) (citing *Monell*, 436 U.S. at 694); *id.* at 1387. Here, in exercising its authority to "operate, manage and regulate [RIC]", the Commission has adopted policies and procedures to facilitate and conduct passenger screening and law enforcement activities related to security at RIC. These policies and procedures are embodied in the Commission's rules and regulations governing activities at RIC, the agreements between TSA and the Commission, and the TSA's rules, regulations, directives, procedures, and protocols, which the Commission has adopted as its own. Amend. Compl. ¶¶ 17-24, 67. Under the Memorandum of Agreement between TSA and the Commission, TSA is responsible for providing guidance on processes and procedures "to implement the Playbook Concept" and the Commission is responsible for "assign[ing] airport resources, when available and appropriate, to execute agreed upon Plays." *Id.* ¶¶ 21-23. If the Defendant Officers followed these policies, customs, or practices, then those "policies" authorized constitutional violations and directly led to Plaintiff's injuries.

*Second*, the Commission is also liable under Section 1983 for vesting "standardless discretion" in the RIC police to determine whether there has been a constitutional violation. *See, e.g.*, *Avery v. Burke County*, 660 F.2d 111, 115 (4th Cir. 1981) (Section 1983 could apply to the Board of Health's failure to adopt policies, rules, or regulations for counseling persons believed to have the sickle cell trait by leaving the decision "to the *standardless discretion* of individual employees." (emphasis added)). Here, the Commission claims to have promulgated rules and regulations setting forth standards to insure First Amendment protection for speech involving picketing, handbilling, and solicitation. Amended Complaint ¶¶ 68-69. But it does not claim to have established guidelines governing other forms of expressive speech at RIC. *Id.* ¶¶ 68-69, 78, 83. Instead, it vested "standardless discretion" in the RIC police "to make unlawful distinctions based on the content or viewpoint of speech" *Id.* ¶¶ 87, 93. The vesting of "standardless discretion" in areas involving important societal issues, such as the First Amendment issues at play here, can form the basis of a Section 1983 claim.

  **B.**  **The Complaint Alleges That Plaintiff's Constitutional Deprivations Were the Result of a Course of Action Taken and Directly Sanctioned by an Official Policymaker and Supervisor.**

It is well-settled that a municipality may be liable under Section 1983 for the actions of a municipal official "whose acts or edicts may fairly be said to represent official policy, *Monell*, supra, at 436 U. S. 694, . . . *whether that action is to be taken only once or to be taken repeatedly*." *Pembaur*, 475 U.S. at 481 (emphasis added); *see also Corbin*, 2008 WL 2149911, at *2 (liability "may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy").

To hold a municipality liable for a single decision (or violation), the policymaker must possess "authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481-82; *see also Spell*, 824 F.2d at 1387 (a policy is fairly attributed to a municipality when "it is directly made by . . . [an] official having final authority to establish and implement the relevant policy") (internal citations omitted); *Johnson v. City of Richmond, Va*, No. 3:04-Civ-340, 2005 WL 1793778, at *4 (E.D. Va. June 24, 2005) ("[i]n any case of municipal liability, 'there must be an official whose acts reflect governmental policy . . . in a matter involving the selection of goals or of means of achieving goals, his choices represent government policy'") (citing *Spell v. McDaniel*, 591 F. Supp. 1090, 1108 (E.D.N.C. 1984)). When police chiefs are "responsible for the choice and implementation of police department practices and procedures, [their] acts and omissions reflect government policy," they will be considered official policymakers for purposes of Section 1983 liability. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *see also Johnson*, 2005 WL 1793778, at *4 (the Chief of Police for the City of Richmond was a policymaker); *Revene*, 882 F.2d at 874 (in the realm of county law-enforcement, the sheriff was the duly delegated policy-maker for the county).[3]

The Amended Complaint alleges that Colonel Trice is the Chief of the RIC Police and, in that capacity, was the senior officer on duty directing the RIC police on the date of the incident. He was responsible "for the management, direction and supervision of the RIC Police and all police officers" employed by the Commission. Amend. Compl. ¶ 11. Colonel Trice also shares with Defendant Williams, the responsibility for

---

[3] We note that Trice, as a supervising official, and a participant in the detention of Plaintiff, may also be held liable in his individual capacity. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

developing, promulgating, approving and implementing all policies, practices, procedures and customs of the RIC Police including, "the training and supervision of its police officers, and the operations and interactions of the RIC Police officers with other security personnel and agencies exercising security functions at RIC." *Id*. Colonel Trice was the senior uniformed RIC police officer on the date of the incident, and directly sanctioned and actively participated in the constitutional deprivations that occurred that day. *Id.* ¶¶ 11, 40, 49-50. Accordingly, the Amended Complaint adequately asserts that Colonel Trice, as the Chief of the RIC Police, was an official policymaker with respect to the operations and conduct of the RIC police, thereby implicating the Commission itself in authorizing and carrying out the unlawful conduct.

### C. The Complaint Alleges That Plaintiff's Constitutional Deprivations Were the Result of a Failure to Train.

The United States Supreme Court has long recognized that liability may be imposed on a municipal entity for failing to train its employees to avoid violating the constitutional rights of the citizens they serve. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff makes that claim here and the court should permit it to proceed.

The plaintiff in *Canton* alleged that the city's inadequate training of police officers resulted in their unconstitutional neglect of her medical condition following her arrest. The Court explained that "failure to train" liability could be predicated upon "deliberate indifference" to constitutional rights:

> [I]t may happen that in light of the duties assigned to specific officers or employees *the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights*, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for

> which the city may be held liable if it actually causes injury.

*Id.* at 390 (emphasis added). The Court then described two non-exclusive situations in which a plaintiff could satisfy the requisite "level of fault" for failure-to-train liability could be satisfied. First, the need for training "can be said to be 'so obvious' that a failure to [train] could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* at 390 n.10. Second, "[i]t could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *Id.* Accordingly, if the failure to train is obvious, plaintiff need not prove a pattern.

In *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997), the Court reaffirmed "the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Id.* at 409 (citing *Canton*, 489 U.S. at 390, n.10). The Court explained:

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice — namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation — that the municipality's indifference led directly to the very consequence that was so predictable.

*Id.* at 409-10; *see also Simpson v. Univ. of Colo.*, 500 F.3d 1170, 1178 (10th Cir. 2007) ("In applying this standard we take note of *Canton*'s discussion of what is meant by an

- 12 -

'obvious' need for training. It recognized that a need could be 'obvious' for reasons other than knowledge of previous incidents within the municipality."); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) (evidence of a single injury caused by a failure to train was evidence that the government actor "was fortunate, not that it wasn't deliberately indifferent").

Here, the officers and agents acting under the Commission's authority are responsible for airport passenger screening. Given the public nature of an airport, and widespread public controversy about the recently adopted enhanced digital body scanning and body pat-down screening, the Commission obviously needed to train its officers and agents properly to respond to First Amendment protests. Given that such protests were likely to recur based on the sheer number of passengers passing through RIC screening, it should have been obvious to the Commission that the failure to train would result in constitutional violations. At this stage of the lawsuit, Plaintiff has adequately alleged that the Commission's failure to train its RIC officers and agents constituted deliberate indifference to the risk of violating Plaintiff's constitutional rights. Moreover, the RIC Police Chief's failure to recognize the egregious nature of the constitutional violations committed here, itself demonstrates a complete failure of constitutionally adequate training.[4]

For these reasons, Plaintiffs' claims based on a failure to train should survive the Commission Defendant's motion to dismiss.

---

[4] *See, e.g., Cohen v. California*, 403 U. S. 15 (1971) (offensive language on a jacket worn in a courthouse was protected speech), and *Smith v. Goguen*, 415 U.S. 566 (1974) (flag worn on clothing was protected speech).

### D. The Claims Against the Individuals in Their Official Capacities.

Because Plaintiff's Section 1983 claims against the Commission survives this Rule 12(b)(6) motion to dismiss for the reasons stated above, Counts One, Two, and Three should also be allowed against Defendants Williams, Trice, Vann, Mason and Kandler in their official capacities.

## II. The State-Law Claims.

The Commission moves to dismiss the state-law claims of Counts IV and V, against the Commission and Williams, based on the doctrine of sovereign immunity. The Complaint as written, however, does not assert these claims against the Commission Defendants.

## III. The Filing of the Amended Complaint.

As previously indicated, Plaintiff filed his Amended Complaint with the Commission Defendants' counsel's consent. *See* Consent Motion to Extend Time and to File Amended Complaint and May 17, 2011 Order entering the Consent Motion. Plaintiff's Amended Complaint identifies the "John Doe #1", "John Doe #2" and "John Smith" defendants, including rank and law enforcement responsibilities. To the extent the Court believes the scope of the Amended Complaint goes beyond the stipulation, Plaintiff respectfully requests leave to amend his Complaint to include the content of the Amended Complaint. To the extent that the Commission Defendants have identified any pleading deficiencies in the Amended Complaint, Plaintiffs requests leave to file a further Amended Complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Commission Defendants' Partial Motion to Dismiss, and allow Plaintiff to proceed to discovery in order to prove his claims. Should this Court decide to grant the Commission Defendants' Partial Motion to Dismiss, Plaintiff respectfully requests these claims be dismissed with leave to amend to correct any pleading deficiencies and/or otherwise conform pleadings to the evidence. *See Canterbury v. J. P. Morgan Mortgage Acquisition Corporation,* Memorandum Opinion, Civil Action No. 3:10-cv-54, (W.D. Va., March 30, 2011) *citing Ostrzenski v. Siegel,* 177 F.3d 245, 252-53 (4th Cir. 1999); *Harden v. Montgomery County*, No. 8:09-CV-031666, 2010 WL 3938326, at *3 n.3 (D. Md. Oct. 6, 2010).

Dated: May 27, 2011

                                            Respectfully Submitted,

                                            **AARON TOBEY**

                                            By:    /s/ James J. Knicely
                                                          James J. Knicely (VSB #19356)
                                                          Robert Luther III (VSB #78766)
                                                          KNICELY & ASSOCIATES, P.C.
                                                          487 McLaws Circle, Suite 2
                                                          Williamsburg, Virginia 23185

                                                          Anand Agneshwar
                                                          Alan C. Veronick
                                                          ARNOLD & PORTER, LLP
                                                          399 Park Avenue
                                                          New York, New York 10022-4690
                                                          *Of Counsel*

                                                          John W. Whitehead (VSB # 20361)
                                                          Douglas R. McKusick (VSB # 72201)
                                                          The Rutherford Institute

1440 Sachem Place
Charlottesville, Virginia 22906
*Of Counsel*

*Attorneys for Plaintiff, AARON TOBEY*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2011, the foregoing Plaintiff's Opposition And Memorandum Of Law In Opposition To Defendants' Partial Motion To Dismiss was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Carlotta P. Wells, Esquire
U.S. Department of Justice – Civil Division
20 Massachusetts Avenue NW – Rm. 7152
Washington, D.C. 20530
carlotta.wells@usdoj.gov

Debra J. Prillaman, Esquire
Robin Perrin Meier, Esquire
Office of the United States Attorney for the Eastern District of Virginia
600 East Main St., Suite 1800 Richmond, Virginia
23219-2447
debra.prillaman@usdoj.gov
robin.p.meier2@usdoj.gov

Paul W. Jacobs, II, Esquire
Henry I. Willett, Esquire
Belinda D. Jones, Esquire
CHRISTIAN & BARTON, LLP
909 East Main St., Suite 1200
Richmond, Virginia 23219-3095
pjacobs@cblaw.com
hwillett@cblaw.com
bjones@cblaw.com

Respectfully Submitted,

By: /s/ James J. Knicely_____
James J. Knicely (VSB #19356)
KNICELY & ASSOCIATES, P.C.
487 McLaws Circle, Suite 2
Williamsburg, Virginia 23185
(757) 253-0026 (phone)
(757) 253-5825 (fax)